| CIVIL ACTION COVER SHEET | DOCKET NO(S) 03-6065-E | Trial Court of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|
| PLAINTIFF(S) S. William Ives | | DEFENDANT(S) Accenture |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Herbert L. Holtz, Esquire 25 New Chardon St., Boston, MA 02114 Board of Bar Overseers number: #554843 | | ATTORNEY (if known) Daniel Klein, Esquire; Seyfarth, Shaw Two Seaport Lane, Boston, MA 02210 |

### Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B22 | Employment Discrimination ( F ) | | ( X ) Yes   ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses ............................................. $.............
   2. Total Doctor expenses .............................................. $.............
   3. Total chiropractic expenses ........................................ $.............
   4. Total physical therapy expenses .................................... $.............
   5. Total other expenses (describe) .................................... $.............
   Subtotal $.............
B. Documented lost wages and compensation to date ......................... $.............
C. Documented property damages to date ................................... $.............
D. Reasonably anticipated future medical and hospital expenses ............ $.............
E. Reasonably anticipated lost wages ..................................... $.............
F. Other documented items of damages (describe)
   $.............
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

   Claims well exceed $25,000.00

   $.............
   TOTAL $over $25,000.00

### CONTRACT CLAIMS
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

TOTAL $. ............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____ DATE: 12/23/03

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

- HEREBY ATTEST AND CERTIFY ON
JAN. 29, 2004, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY _____
ASSISTANT CLERK

3

## COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| SUFFOLK, ss. | SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT |

03-6063-E

S. WILLIAM IVES, )
)
        Plaintiff, )
)  Civil Action No: 03-
v. )
)  *Motion filed and Allowed.*
ACCENTURE, )  *J. Burnes*
)  *Timothy Walsh*
        Defendant. )  *Assc Clerk*
)  *12-23-03*

### PLAINTIFF'S MOTION FOR SPECIAL PROCESS SERVER

Pursuant to Rule 4(c) of the Massachusetts Rules of Civil Procedure, Plaintiff Rosanne Bova moves the Court to appoint Suvalle, Jodrey & Associates, One Devonshire Place, Boston, Massachusetts, 02108 as special process server for the purpose of serving parties in this action.

I HEREBY ATTEST AND CERTIFY ON
JAN. 29, 2004, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY _____
    ASSISTANT CLERK

S. WILLIAM IVES,

By his attorney,

_____
Herbert L. Holtz, BBO# 554843
Law Offices of Herbert L. Holtz
25 New Chardon Street
Boston, MA 02114
(617) 720-2663

December 23, 2003

# Commonwealth of Massachusetts

4

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 03-606_



S. William Ives , Plaintiff(s)

v.

Accenture , Defendant(s)
100 William Street, WIlly

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon HERBERT L. HOLTZ plaintiff's attorney, whose address is 25 NEW CHARDON ST. BOSTON, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at Boston, the _____23d_____ day of
___December___, in the year of our Lord two thousand __03__.

_Michael Joseph Donovan_
Clerk/Magistrate

**NOTES**
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT   (2) MOTOR VEHICLE TORT –  (3) CONTRACT   (4) EQUITABLE RELIEF   (5) OTHER

FORM CIV.P. 1 3rd Rev.

**NOTICE TO DEFENDANT** — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

I HEREBY ATTEST AND CERTIFY ON
JAN. 29, 2004, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY _____
ASSISTANT CLERK

1

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                          SUPERIOR COURT DEPARTMENT
                                                      OF THE TRIAL COURT
                                                             03-6063-E

------------------------------------
                                    )
S. WILLIAM IVES,                    )
                                    )
            Plaintiff,              )
                                    )    Civil Action No: 03-
    v.                              )
                                    )
ACCENTURE,                          )
                                    )
            Defendant.              )
                                    )
------------------------------------

## COMPLAINT

For his Complaint in this action, Plaintiff S. William Ives ("Ives") alleges as follows:

## NATURE OF ACTION

1. This action is brought against Accenture. This action arises from Ives's employment with Accenture and its systemic, continued and ongoing practice of discriminating against Ives on the basis of age. Plaintiff's theories of recovery are violation of Mass. G.L. c. 151B (Count I); violation of ADEA (Count II); Hostile Environment, Mass. G.L. c. 151B (Count III); Hostile Environment, ADEA (Count IV); and Equitable Estoppel (Count V); ; Retaliation (Count VI); and Breach of Contract (Count VII).

## PARTIES

2. Plaintiff William Ives is an individual who is a resident of 80 Clifton Avenue, Marblehead, Essex County, Massachusetts.

3. Defendant Accenture is a corporation with a regular place of business located in Boston, Suffolk County, Massachusetts where it has transacted business and/or caused tortious

injury.

## FACTS

4. Ives was hired by Accenture in 1996 as an Associate Partner.

5. At the time of hire, Ives was told by Accenture that, being age 50, he would never be eligible for partner because he was too old. Ives's date of birth is April 21, 1946.

6. Ives was asked at his hire how he would like working for someone 10 years younger than himself.

7. At hire Ives was informed by Accenture partners and other colleagues, and Ives has also observed, that it is Accenture's policy in the U.S. Business Consulting Group only to make partners of those individuals who can serve 10 years or more and, given that Accenture's mandatory retirement age for partners is 62 years of age, Accenture's policy has been (from Ives's hire to present date) that no one is made partner past the age of 52. Accenture also maintains a policy of preferred retirement age for partners at 56 years of age (with additional incentives put in place to reward partners who retire at age 56), and, accordingly, people over 46 are rarely made partner in the U.S. Business Consulting Group.

8. Ives has served Accenture faithfully and well, and has received positive job performance appraisals.

9. In Spring 2000, Ives was asked to join the Human Performance Service Line (in the Knowledge Management Domain). Ives reported to Rick Stuckey, a partner.

10. By Spring of 2000, Ives had proved himself as an able employee.

11. In Spring, 2000, Ives was proposed for partner by his manager, Richard Stuckey.

12. By June of 2000, Ives's leadership skills had been further recognized; he was assigned by his manager leadership of the Knowledge Management practice within the Human Performance Service Line, a role normally reserved for a partner.

13. By June of 2000, Ives was treated as a partner in the Knowledge Management practice and was functioning and producing as a partner. He was given by his manager all the substantive leadership duties of his practice group; he was included in all Human Performance partner meetings; and his leadership role in the group as a de facto partner was formally identified on Accenture's organizational charts.

14. When Ives was proposed for partner by Mr. Stuckey, Ives was told that more than the usual number of new partners would be made, and, in view of his performance and leadership role, he was to be proposed. Given what he knew previously about Accenture's partner-promotion policy, Ives was surprised, but went along with his being proposed.

15. Accenture deferred Ives for the partnership for one year, but Ives was given a 15% pay increase in recognition of his continuing substantive and leadership contributions. Ives was also given the highest performance rating. Ives's manager further encouraged him that he could still be made a partner, and that his time to be made a partner would come next time. This gave Ives hope.

16. In May, 2001, and having been deferred for one year, Ives was put forward again for partner; he was put forward by Mr. Clinton, the new leader of his group. A partnership meeting was held comprised of senior Accenture executives. The meeting was chaired by Timothy Breene. Based upon information and belief, Mr. Clinton supported Ives's partnership submission at this meeting. Based upon information and belief, this recommendation was vetoed by Mr. Breene and/or the committee. Ives was denied partnership with Accenture based on his age and the no-promotion policy maintained by Accenture for individuals over a certain age (like Ives).

17. When Ives was proposed again for partner in May, 2001, Accenture stated there would be 3 partner slots created and designated to be filled from Ives's practice group.

18. Six candidates competed for those three openings in May, 2001, including Ives.

19. Ives's ratings placed him in the top three of the six candidates vying for partner.

20. Based on his ratings, Ives was promised by Accenture that he would be made partner this time. His supervisor stated that, for all practical purposes, he was all set for the partnership and even begun to provide him with an understanding of the financial benefits of this promotion.

21. When Ives was denied partnership in May, 2001, Accenture decided that only 2 partners would be made from Ives's Group, leaving Ives odd-man-out as the third ranking candidate. The two partners who were promoted were considerably younger than Mr. Ives.

22. When Ives discussed this surprise result with the chief of his service line, Ives expressed his concern for how this might affect prospective, younger candidates in his group yet to come. When Ives remarked they may fare better because they are younger, David Clinton explicitly agreed: he told Ives he could reassure them as such.

23. In response to Ives's concern that he was an associate partner in a partner's role, Mr. Clinton promised Ives that Ives's leadership duties would remain unchanged and that Ives would receive additional compensation. At the time, and for some time further, these promises left Ives with great hope that things would be made right. These promises, said to lull Ives into a state of inaction and complacency, were however ultimately breached. By example, Ives's received only a 7% bonus and his $315,000 salary was thereafter frozen and later cut successively; Ives never achieved parity with partnership salaries or equity; and Ives's leadership role was whittled away in steps to, ultimately, nothing. The 7% bonus was small; when Ives commented on this fact, he was told by his supervisor that they would try again to make it up to him, giving him hope.

24. Following the May, 2001 partnership rejection, and through the Spring and Summer

of 2001, Ives continued to perform and contribute strongly – and worked tirelessly – based on the pointed and important promises made to him by Accenture. Because of these promises, Ives worked harder than, and well beyond the level of, his associate partnership status (and the corresponding renumeration). For example, Ives developed the direction of the Knowledge Management and Portal group, including providing new group management with recommendations for future portal direction and work. Ives also built the group from a staff of 3 persons when he took over to 14 at peak. Ives's overall leadership budget remained at 35%.

25. In September, 2001, Accenture began to chip away at the leadership responsibilities left to Ives. First, Ives was stripped of his Operational leadership role; he now retained only his Thought leadership role in the Group. As a result, Ive's overall leadership budget was reduced from 35% to 10%. Ives was also taken off the Company's organizational chart for the Human Performance Line: now, Reinhard Ziegler was alone identified as lead for Knowledge Management and Learning. Ives asked Mr. Clinton that he be restored to the organizational chart, but this request was never granted.

26. In June, 2002, Ives was told by an Accenture partner that he simply was too old to have become partner and he never should have been proposed in the first place. This partner said to Ives in front of several Accenture managers, "No way at age 55 you would've gotten in."

27. In September, 2002, with the arrival of the new head of Workforce Transformation Group, Susan Pearson, Ives lost all leadership responsibility. Under Ms. Pearson's leadership, all leadership duties now were reserved to partners: Ives's leadership budget went to 0%. Ives was damaged thereby, including enhanced financial losses, greater salary reductions than partners formerly his peers, greater oversight and scrutiny and, significant role reductions and marginalizing, including even the loss of participation in work previously originated by Ives.

28. In September, 2002, Ives made Ms. Pearson aware of his historical leadership contributions to the Knowledge Management and Portal group; Ives asked to play a leadership role. She said she would consider it, giving Ives further hope again that things would ultimately be made right.

29. In October, 2002, Ives learned this request was not granted; Ives was rejected, on the basis of age, for this leadership opportunity. On or about October 25, 2002, Ms. Pearson announced her new leadership team for the Human Performance Service Line Workforce Transformation Group. This announcement came following Ives's leadership request. Ives was excluded from the new leadership team. Ives was left off this leadership team because of his age.

30. Having denied Ives partnership and leadership status, Accenture elevated a less qualified, younger associate partner to usurp some of Ives's work on the Knowledge Management and Portal Group, redesignate it as his own, and then Accenture invited this younger and less qualified associate partner to participate in the same partnership/leadership meetings from which Ives was now excluded. There, Accenture and this younger, less qualified associate partner addressed the very work to which Ives developed. Ives now lost all hope of things being made right.

31. Ives filed a Charge of age discrimination with MCAD on March 27, 2003. Since that filing, Ives has been subjected to adverse action and retribution because he engaged in this protected activity (alleging age bias through his MCAD Charge).

32. Ives's boss, Ms. Pearson (mentioned in the MCAD Charge), has marginalized Ives since his MCAD filing, including by not giving him any sales leads nor chargeable client assignments despite his repeated messages to her that he was available for such assignments. It is the custom and practice for a manager in Ms. Pearson's role to do so, and she did do so pre-MCAD filing and has continued to do so with other direct-reports besides Ives.

33. Ives was given a poor performance evaluation which was capricious, unfairly based, and did not follow Accenture guidelines.

34. Ives's tenure has been threatened by Ms. Pearson: she told him if there is to be a lay-off, he will be the first to go in the group.

### Count I: Chapter 151B

35. Ives repeats and realleges the allegations contained in paragraphs 1 through 34 as if fully restated herein.

36. At all times relevant to the facts of this case Ives was over 40 and a member of the protected class (date of birth 4-21-46); he performed his duties well; he was subjected to unlawful disparate and systemically age-biased treatment, including a series of employment decisions made improperly on the basis of his age; and important duties of his were given to a less-qualified, younger colleague. Accenture's conduct in all these regards constitutes continuing and unrelenting age discrimination in violation of Mass. G.L. c. 151B.

37. Throughout Ives's employment with Accenture, it continuously maintained and effected an illegal, age-biased policy barring the promotion to partner of employees over a certain age.

38. Ives was denied partnership and other career advancement, and suffered significantly, as a result of Accenture's age-biased policy. Accenture's policy created a barrier-ridden workplace for Ives and it tied together, and was the common denominator for, the successive

adverse acts of age-bias to which Ives was subjected.

39. Throughout Ives's employment with Accenture, it treated Ives adversely in a continuing, substantially related succession of age-biased acts.

40. Accenture's age-biased, continuing adverse actions and its maintenance and exercise of a no-promotion policy for employees over a certain age violate Mass. G.L. c. 151B and have proximately caused significant harm and other consequential damages to Ives.

### Count II - ADEA

41. Ives repeats and realleges the allegations contained in paragraphs 1 through 40 as if fully restated herein.

42. At all times relevant to the facts of this case Ives was over 40 and a member of the protected class (date of birth 4-21-46); he performed his duties well; he was subjected to unlawful disparate and systemically age-biased treatment, including a series of employment decisions made improperly on the basis of his age; and important duties of his were given to a less-qualified, younger colleague. Accenture's conduct in all these regards constitutes continuing and unrelenting age discrimination in violation of ADEA.

43. Throughout Ives's employment with Accenture, it continuously maintained and effected an illegal, age-biased policy barring the promotion to partner of employees over a certain age.

44. Ives was denied partnership and other career advancement, and suffered significantly, as a result of Accenture's age-biased policy. Accenture's policy created a barrier-ridden workplace for Ives and it tied together, and was the common denominator for, the successive adverse acts of age-bias to which Ives was subjected.

45. Throughout Ives's employment with Accenture, it treated Ives adversely in a

continuing, substantially related succession of age-biased acts.

46. Accenture's age-biased, continuing adverse actions and its maintenance and exercise of a no-promotion policy for employees over a certain age violate the Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq., and have proximately caused significant harm and other consequential damages to Ives.

### Count III: Hostile Environment Discrimination - Chapter 151B

47. Ives repeats and realleges the allegations contained in paragraphs 1 through 46 as if fully restated herein.

48. By continuously maintaining, implementing and otherwise using an illegal, age-biased policy barring the promotion to partner of employees over a certain age – by imposing this glass-ceilinged workplace – Accenture created a hostile environment for older workers, including Ives, to work in. This age-biased atmosphere was constant, unrelenting, and its adverse effects were continually illustrated by the age-biased treatments to which Ives was repeatedly subjected throughout his tenure with Accenture.

49. Accenture's creation and maintenance of a hostile and discriminatory work environment based on a category protected by Mass. G.L. c. 151B (age) violates Mass. G.L. c. 151B, and it has proximately caused significant harm and other consequential damages to Ives.

### Count IV: Hostile Environment Discrimination -ADEA

50. Ives repeats and realleges the allegations contained in paragraphs 1 through 49 as if fully restated herein.

51. By continuously maintaining, implementing and otherwise using an illegal, age-biased policy barring the promotion to partner of employees over a certain age – by imposing this glass-ceilinged workplace – Accenture created a hostile environment for older workers, including Ives,

to work in. This age-biased atmosphere was constant, unrelenting, and its adverse effects were continually illustrated by the age-biased treatments to which Ives was repeatedly subjected throughout his tenure with Accenture.

52. Accenture's creation and maintenance of a hostile and discriminatory work environment based on a category protected by the Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq. (age) violates ADEA, and it has proximately caused significant harm and other consequential damages to Ives.

### Count V: Equitable Estoppel

53. Ives repeats and realleges the allegations contained in paragraphs 1 through 52 as if fully restated herein.

54. At the time Accenture rejected Ives for partnership in May, 2001, it promised him his leadership duties would remain unchanged. At the time Accenture rejected Ives for partnership in May, 2001, it separately promised him his financial renumeration would remain unaffected and that the Company would make it up to him financially in the future. These promises were made with improper purpose and/or were intentionally false, misleading, deceptive and illusory promises designed to confuse Ives, manipulate and delay him from acting, and keep Ives in a false state of assurance that the Company would make things right for him. Ives reasonably relied on these promises to his detriment because he was induced not to take legal action in a more timely manner.

55. Accenture's promises to Ives were ultimately broken, and Ives finally realized once his exclusion from all leadership was complete (in October, 2002) and that a less qualified, younger associate partner had displaced him in important duties (later in the Fall, 2002) that he had been misled (and discriminated against).

56. As a result of the intentionally false and confusion-inducing promises made by Accenture, Ives was mislead and/or induced to delay taking legal action; as a result, Ives is equitably excused for not having filed his legal claims earlier, and Accenture is equitably estopped from defending his age claims on a statute of limitations basis.

## COUNT VI: Retaliation

57. Ives repeats and realleges the allegations contained in paragraphs 1 through 56 above as if fully restated herein.

58. Ives engaged in protected activity by filing his MCAD Charge on March 27, 2003, and by otherwise opposing unlawful, age-biased practices at Accenture. Accenture and its managers, including Ms. Pearson, are aware of Ives's protected and/or opposition activity. Ives has been treated adversely in material and significant ways because of his legally protected and/or opposition activity, in violation of Mass. G.L. c. 151B and Title VII.

59. As a direct and proximate result of Accenture's retaliatory actions, Ives has suffered significant damages and other injury.

## COUNT VII: Breach of Contract (Express and Implied)

60. Ives repeats and realleges the allegations contained in paragraphs 1 through 59 above as if fully restated herein.

61. Accenture formed an implied contract with Ives by promising him that his leadership role(s) and financial renumeration would not change nor be adversely affected as a result of having been denied partner in May, 2001 (and that the Company would make it up to him financially). Ives, in return, reasonably relied on these promises to his detriment: he did not pursue legal action, he did not quit Accenture, and he further performed by continuing to work far in excess of the capacity expected of his associate partner status. Ives's performance followed

Accenture's inquiry whether, following the partnership rejection, he would now quit Accenture and Ives's agreement that he would not (Ives's decision having been based on Accenture's promises).

62. Accenture formed an express contract with Ives by promising him that his leadership role(s) and financial renumeration would not change nor be adversely affected (following Ives's partnership rejection) if Ives would remain working at Accenture and the status quo of the relationship would otherwise adhere. Ives performed his part of the agreement: he did not pursue legal action, he did not quit Accenture, and he further performed by continuing to work far in excess of the capacity expected of his associate partner status.

63. Accenture breached its implied contract with Ives by stripping him of leadership responsibilities and decreasing his wages.

64. Accenture breached its express contract with Ives by stripping him of leadership responsibilities and decreasing his wages.

65. As a direct and proximate result of Accenture's breaches of contract, Ives has suffered significant damages and other injury.

WHEREFORE, the plaintiff, S. William Ives, respectfully requests that this Court grant him the following relief:

1. Award him compensatory damages with statutory interest;

2. Award him punitive damages and attorneys' fees and costs;

3. Award him emotional distress damages incident to the predicate injuries alleged above; and

4. Grant such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

S. WILLIAM IVES,

By his attorney,

_____
Herbert L. Holtz, BBO# 554843
Law Offices of Herbert L. Holtz
25 New Chardon Street
Boston, MA 02114
(617) 720-2663

December  , 2003

I HEREBY ATTEST AND CERTIFY ON
JAN. 29, 2004, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY_____
ASSISTANT CLERK